## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:                                    )
                                          )
PITTSBURGH TRANSPORTATION                 )       Case No. 05-50406 JAD
COMPANY,                                  )
                                          )       Chapter 11
                    Debtor                )
                                          )
                                          )       Docket No. _279_

## ORDER CONFIRMING
## MODIFIED SECOND AMENDED PLAN DATED NOVEMBER 29, 2006

AND NOW, this **6th** day of ~~____~~ June, 2007, upon consideration of:

      (a)      The Modified Second Amended Plan (the "Plan") dated November 29, 2006, filed by Pittsburgh Transportation Company ("Debtor" or "PTC") pursuant to Chapter 11, Title 11 of the United States Code, 11 U.S.C. §§101-1330, (the "Bankruptcy Code"); and

      (b)      Copies of the Disclosure Statement, the Plan and ballots for the acceptance or rejection of the Plan having been transmitted to holders of claims against and interests in the Debtor entitled to vote on the Plan, and

      (c)      The solicitation of acceptances from holders of claims against and interests in the Debtor having been made within the time and in the manner required by this Court; and

      (d)      The acceptances and rejections to the Plan which were received within the time required by this Court from holders of claims against or interest in the Debtor; and

      (e)      Class 1 is being unimpaired and not entitled to vote; and

      (f)      Class 2 and Class 4 being not entitled to vote.  Nonetheless, Class 2 having consented to confirmation of the Plan; and

(g)     The Debtor having received the requisite percentages of favorable votes in Classes 3 and 5 for an acceptance of the Plan by those Classes in accordance with the requirements of Section 1126 of the Bankruptcy Code; and

(h)     The Class 6 Equity interest holder having consented to confirmation of the Plan; and

(i)     A hearing was held on ~~March 3, 2006~~ *February 6, 2007* to consider confirmation of the Plan (the "Confirmation Hearing"); and

(j)     Proper and timely notice of the Confirmation Hearing having been given in accordance with Section 1128 of the Bankruptcy Code:  After due deliberation and sufficient cause appearing therefore, the Court hereby finds (in accordance with Bankruptcy Rule 7052), determines, orders, adjudges and decrees in accordance with, inter alia, 11 U.S.C. §§363, 365, 1123, 1126, 1127, 1129(a), 1129(b), 1129(d), 1141, 1142 and 1146 and Bankruptcy Rules 3018, 3019 and 9019 that:

1.     All capitalized terms defined in the Plan and used in this Order shall have the meanings ascribed thereto in the Plan.

2.     Classes 1 and 2 are administrative claims and therefore not entitled to vote.  Class 2 consents to confirmation of the Plan.

3.     Class 4, consisting of priority claims is to receive the treatment required under Section 1129(a)(9), and therefore is not entitled to vote.

4.     Classes 3 and 5 are impaired. The Plan has been accepted by the requisite number of Allowed Claims held by creditors in Classes 3, and 5. (11 U.S.C. §1126(b)). *Interest Holders governed by class 6 consent to confirmation of the amended Plan.*

5.     The Plan is hereby confirmed.

6. Except as otherwise expressly provided in the Plan or this Order on the Consummation Date the reorganized Debtor will be vested with all of the property of the estate, free and clear of all Claims, liens, encumbrances, charges and other interests of creditors and equity security holders other than liens or security interests created by the Plan or this Order or ratified by the Plan or this Order.

7. Prior to the Consummation Date of the Plan and in connection with the consummation of the Plan, the Plan and any exhibits thereto may be amended and modified in accordance with Section 1127 in writing by Debtor so long as any such amendment or modification does not adversely change the treatment of the Claim of any creditor or the Interest of any equity security holder nor adversely affect any other rights of any creditor that has not agreed to such amendment or modification.

8. To the extent any Orders entered in these Chapter 11 proceedings conflict with the Plan or this Order, the Plan and this Order shall control, and such Orders are vacated to the extent they conflict with this Order or the Plan. In all other respects such Orders shall remain in full force and effect.

9. All entities, the Claims and Interests of which are dealt with under the Plan shall be, and they hereby are, directed to execute, deliver, file or record any document, and to take any action necessary to implement, effectuate and consummate the Plan in accordance with its terms and all such entities shall be bound by the terms and provisions of all documents to be executed by them in connection with the Plan, whether or not such documents have been executed by such entities.

10. Due and sufficient notice of the settlement of the litigation commenced against Coach USA and Tyburn Ltd. at adversary No. 06-2404 as contemplated by the Plan, was

provided and the settlement is within the range of reasonableness given the uncertainty of the outcome, the complexity of the issues involved, the expense inconvenience and delay if the matter were litigated to conclusion, the likely difficulties in collection and the paramount interest of the creditors. No release as to any party pursuant to the settlement will be effective until a settlement and release agreement substantially in the form of Exhibit A is executed by the parties.

11. The Plan and its provisions as well as this Order and the findings of fact and conclusions of law contained herein shall be binding upon (i) the Debtor, (ii) Reorganized Debtor and any successors thereof, (iii) any lessor or lessee of property to or of Debtor, (iv) any creditor or equity security holder of the Debtor, whether or not the Claim or Interest of such creditor or equity security holder is impaired under the Plan and whether or not such creditor or equity security holder has accepted the Plan, (v) all beneficial holders of Old Bonds, and (vi) any entity, including any governmental entity who has been provided notice of or a copy of the Plan and Disclosure Statement, whether or not such entity, including any governmental entity has appealed or objected to the Plan.

12. Notwithstanding the foregoing, no provision of or proceeding within the Debtor's reorganization proceedings, the Plan or this Order shall, in any way, be construed as discharging, releasing or relieving the Debtor or any other party in any capacity from any liability with respect to the Yellow Cab Company of Pittsburgh Drivers and Support Personnel Combined Retirement Plan ("Pension Plan") or any other defined benefit pension plan under any law governmental policy or regulatory provision. The Pension Benefit Guaranty Corporation and the Pension Plan shall not be enjoined or precluded from enforcing such liability by any of the provisions of the Plan or this Order.

-4-

13. Debtor shall be, and hereby is, authorized and empowered to issue, execute, deliver, file or record any document, and to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms, including, without limitation, any lease, agreement or indemnity, by-law or charter amendment, whether or not any such document or action is specifically referred to in the Plan or any exhibit thereto and without further application to, or order of, this Court.

16. The Debtor shall comply with the provisions of Bankruptcy Rule 3020(c) which relate to providing notice of the entry of the Confirmation Order as provided in Bankruptcy Rule 2002(f).

17. The Court shall retain jurisdiction in accordance with, and as limited by, the Plan and 11 U.S.C. §1142.

18. To the extent the terms of the Plan and this Order conflict, this Order shall control.

By the Court,

2-6-2007

_____ J.

**FILED**

FEB -6 2007

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

-5-

00771512.DOC

Presented at hearing. em

# EXHIBIT A

<u>**SETTLEMENT AGREEMENT AND RELEASE**</u>

This Settlement Agreement and Release ("Settlement Agreement") dated as of the _____ day of February __, 2007 is made between Pittsburgh Transportation Company ("PTC" or "Debtor"), Y/C Holdings, Inc. ("YCHI"), a Pennsylvania Business Corporation, James D. Campolongo ("Campolongo"), Coach U.S.A., a Delaware corporation ("Coach") and Tyburn Limited, a Delaware corporation ("Tyburn") (hereinafter, the Debtor, YCHI, Campolongo, Coach and Tyburn will sometimes be collectively referred to as the "Parties").

<u>**Recitals**</u>

WHEREAS, PTC is a chapter 11 debtor in a case commenced on December 16, 2005 (the "Petition Date") pending before the United States Bankruptcy Court for the Western District of Pennsylvania, Pittsburgh Division (the "Bankruptcy Court"), Case No. 05-50406 (the "Bankruptcy Case");

WHEREAS, on or about July 2, 2003, YCHI, Campolongo, Coach and Tyburn executed that certain Stock Purchase Agreement (the "Stock Purchase Agreement"), whereby Coach and Tyburn sold all of the issued and outstanding capital stock of, *inter alia*, Pittsburgh Transportation Company, to YCHI and Campolongo;

WHEREAS in connection with the Stock Purchase Agreement, YCHI executed that certain Subordinated Term Promissory Note (the "YCHI Note") in favor of Coach for $1,000,000, and Campolongo executed an personal unconditional guaranty agreement (the "Guaranty") relative to the YCHI Note for the benefit of Coach.

WHEREAS, subsequent to the execution of the Stock Purchase Agreement, lawsuits styled *Carol Packard, et al. v. Pittsburgh Transportation Company*, Cause No. 02-CV-89 (filed on or about January 9, 2002), *Eugene J. Kott, et al. v. Transportation Company*, Cause No. 03-CV-1151 (filed on or about August 5, 2003) and *Lynn A. MacPhail v. Pittsburgh Transportation Company*, Cause No. 05-CV-1390 (filed on or about October 10, 2005) (collectively, the "FLSA Lawsuits") were initiated against the Debtor by the foregoing plaintiffs (collectively the "FLSA Plaintiffs") alleging violations of the Fair Labor Standards Act, and seeking damages for the Debtor's failure to pay certain drivers overtime pay;

WHEREAS, on January 27, 2006, Coach filed that certain Complaint against Campolongo, initiating the lawsuit styled Coach U.S.A., Inc. v. James D. Camplolongo and YC Holdings, Inc., C.V. H-06-290; In the United States District Court for the Southern District of Texas-Houston Division (the "Camplolongo Lawsuit") seeking the payment for breaches of the Note and the Guaranty, and amounts due thereunder;

WHEREAS, on May 5, 2006, the Debtor filed that certain Complaint against Coach and Tyburn, initiating an adversary proceeding in the Bankruptcy Case styled *Pittsburgh Transportation Company v. Coach U.S.A., Inc. and Tyburn Limited,* Adversary No. 06-020404 (the "Adversary Proceeding"), alleging therein that the Debtor was entitled to declaratory relief and/or a judgment in its favor against Coach arising out of an alleged breach of obligations contained in the Stock Purchase Agreement;

DALLAS1 1116162v3 40977-00061

WHEREAS, Coach and Tyburn have asserted absolute defenses to the Adversary Proceeding;

WHEREAS, the Debtor has filed its "Second Amended Plan of Reorganization dated November 10, 2006" (as such plan may be subsequently amended, the "Plan"), which provides as a condition to confirmation that Coach and Tyburn received releases, in a form satisfactory to Coach and Tyburn (the "Coach Releases"), from, *inter alia*, the FLSA Plaintiffs, the Debtor, YCHI and Campolongo and that Debtor, YCHI and Campolongo received releases (the "Debtor Releases"), in a form satisfactory to them , from, *inter alia*, Coach and Tyburn;

WHEREAS, the Plan obligates YCHI and other parties to fund the financial obligations under the Plan, including, but not limited to the payment of pro-rata distributions to the FLSA Plaintiffs as Class 5 creditors under the Plan;

WHEREAS, the Debtor, YCHI, Campolongo, Coach and Tyburn have engaged in good faith arms length settlement negotiations and have reached the terms of an agreement pursuant to which all claims and causes of action by and between the Parties will be compromised and released.

WHEREAS, by entering into this Agreement, Coach and Tyburn do not in any way admit liability relative to the Adversary Proceeding and the Debtor does not admit the validity of any of the asserted defenses. The Parties enter into this Agreement to buy peace, avoid further litigation and have finality.

NOW, THEREFORE, in consideration of the premises, the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree, as follows:

1. **Definitions.**

In addition to the definitions contained within the body of this Settlement Agreement, the following definitions will be applicable to this Agreement (and those capitalized terms not defined herein shall have the meanings ascribed to them in the Plan):

1.1 **"Claims"** shall refer to any and all liabilities, obligations, demands, judgments, causes of action, suits, counterclaims, defenses, debts, sums of money due or owed, costs, expenses, damages, attorneys fees, accounts, covenants, contracts, agreements, arrangements, promises, obligations, warranties, trespasses, torts, injuries and losses, of whatever kind or character, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, absolute, fixed, conditional or contingent, matured or unmatured, liquidated or unliquidated in amount, due or to become due, and whether arising from contract, tort, or otherwise, including but not limited those arising from or related to the Adversary Proceeding, the Stock Purchase Agreement, the FLSA Lawsuits and the Campolongo Lawsuit. "Claims" shall specifically exclude Excluded Claims as defined in Paragraph 1.4 below.

**1.2** **"Confirmation Order"** shall refer to the date of entry of an Order of the Bankruptcy Court confirming the Plan

**1.3** **"Effective Date"** shall refer to that date 11 days after the entry of the Confirmation Order, or the 11th day after the date on which any stay pending appeal of the Confirmation Order expires or is vacated, whichever first occurs.

**1.4** **"Excluded Claims"** shall be defined to mean: (a) claims arising from a default under this Settlement Agreement; (b) any Liabilities subject to the indemnification provisions subject to Paragraph 2.3 below; (c) any liabilities and obligations assumed by the Yellow Cab Company of Pittsburgh, PTC, Airport Limousine Services, Inc. and Airlines Acquisition Co., Inc. pursuant to Section 9.19 of the Stock Purchase Agreement entitled "ERISA Claims"; (d) any Liability of YCHI and/or Campolongo due to breaches of any representations and warranties in Sections 3.4, 3.5, or 3.6 of the Stock Purchase Agreement; and (e) any Liability for any Third Party Claim (as defined in the Stock Purchase Agreement) for which YCHI and Campolongo has an obligation of indemnity pursuant to Sections 11.2 (iv) and (v) of the Stock Purchase Agreement.

**2.** **Undertakings by the Debtor, YCHI and Campolongo:**

For and in consideration of the premises, agreements and representations herein, and the execution of this Agreement, the Debtor, YCHI and Campolongo agree to do the following:

**2.1** **Timely Payment of Settlement Sum.**

YCHI shall pay and/or cause to be paid in cash or other cash equivalent at the Effective Date, $316,000.00 (the "Settlement Sum") to Coach c/o Michael S. Held at Jenkens & Gilchrist, a Professional Corporation, 1445 Ross Avenue, Suite 3200, Dallas, Texas 75202.

**2.2** **Release of Claims against Coach and Tyburn.**

On the Effective Date, the Debtor, YCHI and Campolongo, on their own behalves and on the behalves of any of their successors, assigns, heirs, administrators, executors, employees, agents, representatives, and attorneys, shall and do hereby voluntarily and knowingly, forever and fully, finally, and completely, release, acquit and discharge Coach, Tyburn, and their respective successors, predecessors, directors, officers, employees, agents, representatives, attorneys, subsidiaries, affiliates, parents, and any current and former directors, officers, employees, agents, representatives or attorneys of its subsidiaries, affiliates or parent (collectively, the "Coach Released Parties") from any and all Claims, as defined in this Agreement.

**2.3** **Indemnity by YCHI and Campolongo.**

YCHI and Campolongo covenant and agree that they, jointly and severally will indemnify, defend, protect and hold harmless the Coach Released Parties at all times from and after the date of this Settlement Agreement from and against all liability (whether or not the Coach Released Parties have sustained an actual loss when indemnity pursuant to this provision is sought), as well as losses, damages, claims, actions, suits, proceedings, demands, assessments, adjustments, costs and expenses (including specifically, but without limitation, reasonable attorneys' fees and expenses of investigation), whether or not involving a third party claim incurred by a Coach Released Party as a result of, or arising from any demand or Claims against the Coach Released Parties arising from or pursuant to the Stock Purchase Agreement, or pursuant to any common law theory of liability asserted by any FLSA Plaintiff or other third party related to the Stock Purchase Agreement and/or the FLSA Lawsuits (collectively, "Liabilities" and singularly, each a "Liability"). If any Liability should be asserted against a Coach Released Party, that Coach Released Party shall give notice to YCHI and Campolongo (the "Claim Notice"). YCHI and Campolongo shall have twenty days after the Claim Notice is sent within which to assume the defense of the Coach Released Party in writing. Upon the assumption of such defense, through counsel reasonably satisfactory to the Coach Released Party, YCHI and Campolongo may conduct any proceedings or negotiations relating to the Liabilities as are necessary or appropriate to defend the Coach Released Party and/or settle the Liability, and shall be entitled to control the conduct of such defense and any decision to settle such Liability, so long as YCHI and Campolongo continue such defense until the final resolution of such Liability. The expenses (including all attorneys' fees) of all negotiations, proceedings, contests, lawsuits, settlements or judgments entered with respect to any Liability shall be borne by YCHI and Campolongo. If YCHI and Campolongo shall not agree to assume the defense of any Liability in writing within 20 days after the Claim Notice of such Liability has been delivered, or shall fail to continue such defense until the final resolution of such Liability, then the Coach Released Party may defend against such Liability in such manner as it may deem appropriate, and the Coach Released Party may settle such Liability on such terms as it may deem appropriate. YCHI and Campolongo shall promptly reimburse the Coach Released Party for the amount of all settlement payments and expenses, legal and otherwise, incurred by the Coach Released Party in connection with the defense or settlement of such Liability. If no settlement of such Liability is made, then YCHI and Campolongo shall satisfy any judgment rendered with respect to such Liability before the Coach Released Party is required to do so, and pay all expenses, legal or otherwise, incurred by the Coach Released Party in the defense against such Liability.

### 2.4 Dismissal of the Adversary Proceeding.

Within ten (10) business days of the Effective Date, the Debtor shall file a notice of dismissal, or motion to dismiss the Adversary Proceeding, to dismiss the Adversary Proceeding with prejudice.

### 3. Undertakings by the Coach and Tyburn.

For and in consideration of the premises, agreements and representations herein, the execution of this Agreement and the release contained herein, the Trustee agrees to do the following:

### 3.1 Release of Claims against the Debtor, YCHI and Campolongo.

Upon payment of good funds of the Settlement Sum to Coach and the receipt by Coach and Tyburn of the Coach Releases, and subject to section 3.2 below, Coach and Tyburn, on their own behalves and on the behalves of any of their successors, assigns, heirs, administrators, executors, employees, agents, representatives, and attorneys, shall and do hereby voluntarily and knowingly, forever and fully, finally, and completely, release, acquit and discharge the Debtor, YCHI and Campolongo, and their respective successors, predecessors, directors, officers, employees, agents, representatives, attorneys, subsidiaries, affiliates, parents, and any current and former directors, officers, employees, agents, representatives or attorneys of its subsidiaries, affiliates or parent (collectively, the "Debtor Released Parties") from any and all Claims, as defined in this Agreement. However, should the Settlement Sum in any way be avoided or Tyburn and/or Coach be forced to disgorge the Settlement Sum (or any amount representing the Settlement Sum or any part thereof): (a) this release of the Debtor Released Parties shall be void, all Claims of Coach and Tyburn against the Debtor Released Parties (including, but not limited to those claims that were asserted, or could have been asserted in the Campolongo Lawsuit) shall be restored and may be asserted; (b) YCHI and Campolongo agree that any statutes of limitations associated with the claims that were asserted, or could have been asserted in the Campolongo Lawsuit are, and have been, tolled; and (c) YCHI and Campolongo irrevocably waive any statute of limitations defenses or allegations relative to the claims that were asserted, or could have been asserted in the Campolongo Lawsuit.

### 3.2 Dismissal of the Campolongo Lawsuit.

Ninety-one (91) days following the payment in good funds of the Settlement Sum to Coach, the receipt by Coach and Tyburn of the Coach Releases, and the absence of a bankruptcy filing by YCHI, Campolongo or the payor of the Settlement Sum, Coach shall file a motion to dismiss the Campolongo Lawsuit. However, should the Settlement Sum in any way be avoided or Tyburn and/or Coach be forced to disgorge the Settlement Sum (or any amount representing the Settlement Sum or any part thereof): (a) this release of the Debtor Released Parties shall be void, all Claims of Coach and Tyburn against the Debtor Released Parties (including, but not limited to those claims that were asserted, or could have been asserted in the Campolongo Lawsuit) shall be restored and may be asserted; (b) YCHI and Campolongo agree that any statutes of limitations associated with the claims that were asserted, or could have been asserted in the Campolongo Lawsuit are, and have been, tolled; and (c) YCHI and Campolongo irrevocably waive any statute of limitations defenses or allegations relative to the claims that were asserted, or could have been asserted in the Campolongo Lawsuit.

### 4. Representations, Warranties and Stipulations.

### 4.1 Binding Agreements.

Each Party to this Agreement represents and warrants that he, she, or it has the power and authority to enter into this Agreement, and this Agreement is valid, binding, and enforceable upon him, her or it.

**4.2   Authority.**

Each Party to this Settlement Agreement represents and warrants that no consent, approval, authorization or order of, and no notice to, or filing with any court, governmental authority, person, or entity is required for the execution, delivery, and performance of this Settlement Agreement; provided, however, that this Settlement Agreement is subject to the approval of the Bankruptcy Court. The Parties agree that this Settlement Agreement was negotiated in good faith and that consummation in good faith is a material term hereof, and that they will execute such other documents or take such other actions as needed to consummate the intent of this Settlement Agreement. To the extent that approval of the board of directors of YCHI, Coach or Tyburn is required, the signatory hereto warrants that such approval has been obtained as of the Date of this Settlement Agreement.

**4.3   Ownership of Claims.**

Each Party represents and warrants that it owns the Claims asserted or released in this Settlement Agreement, arising from the Stock Purchase Agreement, the Campolongo Lawsuit, the FLSA Lawsuits or in the Adversary Proceeding, and no part of its Claims asserted or released in this Settlement Agreement have been assigned or transferred to any other person or entity.

**5.   Miscellaneous Provisions.**

**5.1   Modification.**

This Settlement Agreement may be modified only by a written instrument duly executed by all the Parties.

**5.2   Binding Effect.**

The provisions of this Agreement shall be binding upon and inure to the benefit of each of the Parties hereto and each of their respective representatives, directors, agents, employees, officers, affiliates, successors and assigns and the persons and entities being released herein.

**5.3   Severability.**

If any provision of this Settlement Agreement is invalid, illegal or unenforceable, the balance of this Settlement Agreement shall remain in effect, and if any provision is inapplicable to any person or circumstance, it shall nevertheless remain applicable to all other persons and circumstances.

**5.4   Default.**

DALLAS1 1116162v3 40977-00061

In the event that any Party to this Settlement Agreement breaches any provision herein, the other Party shall have the right to institute litigation to enforce this Settlement Agreement and the defaulting Party shall be responsible for reasonable attorneys' fees and costs associated with the enforcement of this Settlement Agreement.

**5.5    Counterparts.**

This Settlement Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**5.6    Governing Law.**

This Settlement Agreement shall be governed by and construed in accordance with the laws of Texas and the United States Bankruptcy Code.

**5.7    Gender and Number.**

Whenever the context requires, the gender of all words used herein shall include the masculine, feminine and neuter, and the number of all words shall include the singular and plural.

**5.8    Date of this Agreement.**

Date of this Settlement Agreement shall refer to the day on which the last Party to this Settlement Agreement executes same before a notary public.

**5.9    Notice.**

To the extent notice is required by any provision of this Settlement Agreement, it shall be sent to the following:

To the Debtor, YCHI or Campolongo:

> Michael Kaminski, Esq.
> Thorp Reed & Armstrong
> One Oxford Centre
> 301 Grant Street
> 14th Floor
> Pittsburgh, PA  1219

To Coach or Tyburn:

> Michael S. Held, Esq.
> Jenkens & Gilchrist,
> A Professional Corporation

DALLAS1 1116162v3 40977-00061

1445 Ross Ave.
Suite 3200
Dallas, TX 75202

If any of the above addresses change, the Party shall notify the other Parties to this Settlement Agreement of the change of address in writing.

EACH PARTY EXPRESSLY WARRANTS THAT HE OR SHE HAS CAREFULLY READ THIS SETTLEMENT AGREEMENT, UNDERSTANDS ITS CONTENTS AND SIGNS THIS AGREEMENT AS HIS OR HERS OWN FREE ACT.

DALLAS1 1116162v3 40977-00061

James D. Campolongo

Dated:_____          By:_____

**STATE OF PENNSYLVANIA** §
                         §
**COUNTY OF _____** §

This instrument was acknowledged before me on the _____ day of _____, 2006, by _____ known to me to be the person whose name is subscribed to the foregoing Settlement Agreement and Release and acknowledged to me that he has read the foregoing Settlement Agreement and Release, that he has the authority to execute the Settlement Agreement and Release, and that he executed it for the purposes and considerations therein expressed and in the capacities therein stated.

Subscribed and sworn to before me on this the _____ day of _____, 2007 to certify which witness my hand and seal of office.

_____
Notary Public in and for
the State of Pennsylvania

DALLAS1 1116162v3 40977-00061

Pittsburgh Transportation Company

Dated:_____          By: _____
                               Name: _____
                               Title: _____


**STATE OF PENNSYLVANIA**          §
                                   §
                                   §
**COUNTY OF** _____            §

     This instrument was acknowledged before me on the _____ day of _____, 2006, by _____ known to me to be the person whose name is subscribed to the foregoing Settlement Agreement and Release and acknowledged to me that he has read the foregoing Settlement Agreement and Release, that he has the authority to execute the Settlement Agreement and Release, and that he executed it for the purposes and considerations therein expressed and in the capacities therein stated.

     Subscribed and sworn to before me on this the _____ day of _____, 2007 to certify which witness my hand and seal of office.


_____
Notary Public in and for
the State of Pennsylvania

DALLAS1 1116162v3 40977-00061

Y/C Holdings, Inc.

Dated:_____

By: _____
Name: _____
Title: _____


**STATE OF PENNSYLVANIA**          §
                                   §
**COUNTY OF** _____           §

This instrument was acknowledged before me on the _____ day of _____, 2006, by _____ known to me to be the person whose name is subscribed to the foregoing Settlement Agreement and Release and acknowledged to me that he has read the foregoing Settlement Agreement and Release, that he has the authority to execute the Settlement Agreement and Release, and that he executed it for the purposes and considerations therein expressed and in the capacities therein stated.

Subscribed and sworn to before me on this the _____ day of _____, 2007 to certify which witness my hand and seal of office.


_____
Notary Public in and for
the State of Pennsylvania

DALLAS1 1116162v3 40977-00061

Coach U.S.A.,

Dated:_____        By: _____
                             Name: _____
                             Title: _____


**STATE OF TEXAS**          §
                            §
**COUNTY OF** _____     §

     This instrument was acknowledged before me on the _____ day of _____, 2006, by _____ known to me to be the person whose name is subscribed to the foregoing Settlement Agreement and Release and acknowledged to me that he has read the foregoing Settlement Agreement and Release, that he has the authority to execute the Settlement Agreement and Release, and that he executed it for the purposes and considerations therein expressed and in the capacities therein stated.

     Subscribed and sworn to before me on this the _____ day of _____, 2007 to certify which witness my hand and seal of office.


_____
Notary Public in and for
the State of Texas

Tyburn Limited

Dated:_____        By: _____
                             Name: _____
                             Title: _____

**STATE OF TEXAS**           §
                                  §
**COUNTY OF _____**           §

This instrument was acknowledged before me on the _____ day of _____, 2006, by _____ known to me to be the person whose name is subscribed to the foregoing Settlement Agreement and Release and acknowledged to me that he has read the foregoing Settlement Agreement and Release, that he has the authority to execute the Settlement Agreement and Release, and that he executed it for the purposes and considerations therein expressed and in the capacities therein stated.

Subscribed and sworn to before me on this the _____ day of _____, 2007 to certify which witness my hand and seal of office.

_____
Notary Public in and for
the State of Texas

DALLAS1 1116162v3 40977-00061

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") dated as of the_____ day of February __, 2007 is made between Pittsburgh Transportation Company ("PTC" or "Debtor"), Y/C Holdings, Inc. ("YCHI"), a Pennsylvania Business Corporation, James D. Campolongo ("Campolongo"), Coach U.S.A., a Delaware corporation ("Coach") and Tyburn Limited, a Delaware corporation ("Tyburn") (hereinafter, the Debtor, YCHI, Campolongo, Coach and Tyburn will sometimes be collectively referred to as the "Parties").

## Recitals

WHEREAS, PTC is a chapter 11 debtor in a case commenced on December 16, 2005 (the "Petition Date") pending before the United States Bankruptcy Court for the Western District of Pennsylvania, Pittsburgh Division (the "Bankruptcy Court"), Case No. 05-50406 (the "Bankruptcy Case");

WHEREAS, on or about July 2, 2003, YCHI, Campolongo, Coach and Tyburn executed that certain Stock Purchase Agreement (the "Stock Purchase Agreement"), whereby Coach and Tyburn sold all of the issued and outstanding capital stock of, *inter alia*, Pittsburgh Transportation Company, to YCHI and Campolongo;

WHEREAS in connection with the Stock Purchase Agreement, YCHI executed that certain Subordinated Term Promissory Note (the "YCHI Note") in favor of Coach for $1,000,000, and Campolongo executed an personal unconditional guaranty agreement (the "Guaranty") relative to the YCHI Note for the benefit of Coach.

WHEREAS, subsequent to the execution of the Stock Purchase Agreement, lawsuits styled *Carol Packard, et al. v. Pittsburgh Transportation Company*, Cause No. 02-CV-89 (filed on or about January 9, 2002), *Eugene J. Kott, et al. v. Transportation Company*, Cause No. 03-CV-1151 (filed on or about August 5, 2003) and *Lynn A. MacPhail v. Pittsburgh Transportation Company*, Cause No. 05-CV-1390 (filed on or about October 10, 2005) (collectively, the "FLSA Lawsuits") were initiated against the Debtor by the foregoing plaintiffs (collectively the "FLSA Plaintiffs") alleging violations of the Fair Labor Standards Act, and seeking damages for the Debtor's failure to pay certain drivers overtime pay;

WHEREAS, on January 27, 2006, Coach filed that certain Complaint against Campolongo, initiating the lawsuit styled Coach U.S.A., Inc. v. James D. Camplolongo and YC Holdings, Inc., C.V. H-06-290; In the United States District Court for the Southern District of Texas-Houston Division (the "Camplolongo Lawsuit") seeking the payment for breaches of the Note and the Guaranty, and amounts due thereunder;

WHEREAS, on May 5, 2006, the Debtor filed that certain Complaint against Coach and Tyburn, initiating an adversary proceeding in the Bankruptcy Case styled *Pittsburgh Transportation Company v. Coach U.S.A., Inc. and Tyburn Limited,* Adversary No. 06-020404 (the "Adversary Proceeding"), alleging therein that the Debtor was entitled to declaratory relief and/or a judgment in its favor against Coach arising out of an alleged breach of obligations contained in the Stock Purchase Agreement;

WHEREAS, Coach and Tyburn have asserted absolute defenses to the Adversary Proceeding;

WHEREAS, the Debtor has filed its "Second Amended Plan of Reorganization dated November 10, 2006" (as such plan may be subsequently amended, the "Plan"), which provides as a condition to confirmation that Coach and Tyburn received releases, in a form satisfactory to Coach and Tyburn (the "Coach Releases"), from, *inter alia*, the FLSA Plaintiffs, the Debtor, YCHI and Campolongo and that Debtor, YCHI and Campolongo received releases (the "Debtor Releases"), in a form satisfactory to them , from, *inter alia*, Coach and Tyburn;

WHEREAS, the Plan obligates YCHI and other parties to fund the financial obligations under the Plan, including, but not limited to the payment of pro-rata distributions to the FLSA Plaintiffs as Class 5 creditors under the Plan;

WHEREAS, the Debtor, YCHI, Campolongo, Coach and Tyburn have engaged in good faith arms length settlement negotiations and have reached the terms of an agreement pursuant to which all claims and causes of action by and between the Parties will be compromised and released.

WHEREAS, by entering into this Agreement, Coach and Tyburn do not in any way admit liability relative to the Adversary Proceeding and the Debtor does not admit the validity of any of the asserted defenses. The Parties enter into this Agreement to buy peace, avoid further litigation and have finality.

NOW, THEREFORE, in consideration of the premises, the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree, as follows:

## 1. Definitions.

In addition to the definitions contained within the body of this Settlement Agreement, the following definitions will be applicable to this Agreement (and those capitalized terms not defined herein shall have the meanings ascribed to them in the Plan):

1.1 **"Claims"** shall refer to any and all liabilities, obligations, demands, judgments, causes of action, suits, counterclaims, defenses, debts, sums of money due or owed, costs, expenses, damages, attorneys fees, accounts, covenants, contracts, agreements, arrangements, promises, obligations, warranties, trespasses, torts, injuries and losses, of whatever kind or character, whether known or unknown, anticipated or unanticipated, suspected or unsuspected, absolute, fixed, conditional or contingent, matured or unmatured, liquidated or unliquidated in amount, due or to become due, and whether arising from contract, tort, or otherwise, including but not limited those arising from or related to the Adversary Proceeding, the Stock Purchase Agreement, the FLSA Lawsuits and the Campolongo Lawsuit. "Claims" shall specifically exclude Excluded Claims as defined in Paragraph 1.4 below.

Page 2 of 13

**1.2** **"Confirmation Order"** shall refer to the date of entry of an Order of the Bankruptcy Court confirming the Plan

**1.3** **"Effective Date"** shall refer to that date 11 days after the entry of the Confirmation Order, or the 11th day after the date on which any stay pending appeal of the Confirmation Order expires or is vacated, whichever first occurs.

**1.4** **"Excluded Claims"** shall be defined to mean: (a) claims arising from a default under this Settlement Agreement; (b) any Liabilities subject to the indemnification provisions subject to Paragraph 2.3 below; (c) any liabilities and obligations assumed by the Yellow Cab Company of Pittsburgh, PTC, Airport Limousine Services, Inc. and Airlines Acquisition Co., Inc. pursuant to Section 9.19 of the Stock Purchase Agreement entitled "ERISA Claims"; (d) any Liability of YCHI and/or Campolongo due to breaches of any representations and warranties in Sections 3.4, 3.5, or 3.6 of the Stock Purchase Agreement; and (e) any Liability for any Third Party Claim (as defined in the Stock Purchase Agreement) for which YCHI and Campolongo has an obligation of indemnity pursuant to Sections 11.2 (iv) and (v) of the Stock Purchase Agreement.

## 2. Undertakings by the Debtor, YCHI and Campolongo:

For and in consideration of the premises, agreements and representations herein, and the execution of this Agreement, the Debtor, YCHI and Campolongo agree to do the following:

### 2.1 Timely Payment of Settlement Sum.

YCHI shall pay and/or cause to be paid in cash or other cash equivalent at the Effective Date, $316,000.00 (the "Settlement Sum") to Coach c/o Michael S. Held at Jenkens & Gilchrist, a Professional Corporation, 1445 Ross Avenue, Suite 3200, Dallas, Texas 75202.

### 2.2 Release of Claims against Coach and Tyburn.

On the Effective Date, the Debtor, YCHI and Campolongo, on their own behalves and on the behalves of any of their successors, assigns, heirs, administrators, executors, employees, agents, representatives, and attorneys, shall and do hereby voluntarily and knowingly, forever and fully, finally, and completely, release, acquit and discharge Coach, Tyburn, and their respective successors, predecessors, directors, officers, employees, agents, representatives, attorneys, subsidiaries, affiliates, parents, and any current and former directors, officers, employees, agents, representatives or attorneys of its subsidiaries, affiliates or parent (collectively, the "Coach Released Parties") from any and all Claims, as defined in this Agreement.

### 2.3 Indemnity by YCHI and Campolongo.

DALLAS1 1116162v3 40977-00061

YCHI and Campolongo covenant and agree that they, jointly and severally will indemnify, defend, protect and hold harmless the Coach Released Parties at all times from and after the date of this Settlement Agreement from and against all liability (whether or not the Coach Released Parties have sustained an actual loss when indemnity pursuant to this provision is sought), as well as losses, damages, claims, actions, suits, proceedings, demands, assessments, adjustments, costs and expenses (including specifically, but without limitation, reasonable attorneys' fees and expenses of investigation), whether or not involving a third party claim incurred by a Coach Released Party as a result of, or arising from any demand or Claims against the Coach Released Parties arising from or pursuant to the Stock Purchase Agreement, or pursuant to any common law theory of liability asserted by any FLSA Plaintiff or other third party related to the Stock Purchase Agreement and/or the FLSA Lawsuits (collectively, "Liabilities" and singularly, each a "Liability"). If any Liability should be asserted against a Coach Released Party, that Coach Released Party shall give notice to YCHI and Campolongo (the "Claim Notice"). YCHI and Campolongo shall have twenty days after the Claim Notice is sent within which to assume the defense of the Coach Released Party in writing. Upon the assumption of such defense, through counsel reasonably satisfactory to the Coach Released Party, YCHI and Campolongo may conduct any proceedings or negotiations relating to the Liabilities as are necessary or appropriate to defend the Coach Released Party and/or settle the Liability, and shall be entitled to control the conduct of such defense and any decision to settle such Liability, so long as YCHI and Campolongo continue such defense until the final resolution of such Liability. The expenses (including all attorneys' fees) of all negotiations, proceedings, contests, lawsuits, settlements or judgments entered with respect to any Liability shall be borne by YCHI and Campolongo. If YCHI and Campolongo shall not agree to assume the defense of any Liability in writing within 20 days after the Claim Notice of such Liability has been delivered, or shall fail to continue such defense until the final resolution of such Liability, then the Coach Released Party may defend against such Liability in such manner as it may deem appropriate, and the Coach Released Party may settle such Liability on such terms as it may deem appropriate. YCHI and Campolongo shall promptly reimburse the Coach Released Party for the amount of all settlement payments and expenses, legal and otherwise, incurred by the Coach Released Party in connection with the defense or settlement of such Liability. If no settlement of such Liability is made, then YCHI and Campolongo shall satisfy any judgment rendered with respect to such Liability before the Coach Released Party is required to do so, and pay all expenses, legal or otherwise, incurred by the Coach Released Party in the defense against such Liability.

### 2.4 Dismissal of the Adversary Proceeding.

Within ten (10) business days of the Effective Date, the Debtor shall file a notice of dismissal, or motion to dismiss the Adversary Proceeding, to dismiss the Adversary Proceeding with prejudice.

### 3. Undertakings by the Coach and Tyburn.

For and in consideration of the premises, agreements and representations herein, the execution of this Agreement and the release contained herein, the Trustee agrees to do the following:

### 3.1 Release of Claims against the Debtor, YCHI and Campolongo.

Upon payment of good funds of the Settlement Sum to Coach and the receipt by Coach and Tyburn of the Coach Releases, and subject to section 3.2 below, Coach and Tyburn, on their own behalves and on the behalves of any of their successors, assigns, heirs, administrators, executors, employees, agents, representatives, and attorneys, shall and do hereby voluntarily and knowingly, forever and fully, finally, and completely, release, acquit and discharge the Debtor, YCHI and Campolongo, and their respective successors, predecessors, directors, officers, employees, agents, representatives, attorneys, subsidiaries, affiliates, parents, and any current and former directors, officers, employees, agents, representatives or attorneys of its subsidiaries, affiliates or parent (collectively, the "Debtor Released Parties") from any and all Claims, as defined in this Agreement. However, should the Settlement Sum in any way be avoided or Tyburn and/or Coach be forced to disgorge the Settlement Sum (or any amount representing the Settlement Sum or any part thereof): (a) this release of the Debtor Released Parties shall be void, all Claims of Coach and Tyburn against the Debtor Released Parties (including, but not limited to those claims that were asserted, or could have been asserted in the Campolongo Lawsuit) shall be restored and may be asserted; (b) YCHI and Campolongo agree that any statutes of limitations associated with the claims that were asserted, or could have been asserted in the Campolongo Lawsuit are, and have been, tolled; and (c) YCHI and Campolongo irrevocably waive any statute of limitations defenses or allegations relative to the claims that were asserted, or could have been asserted in the Campolongo Lawsuit.

### 3.2 Dismissal of the Campolongo Lawsuit.

Ninety-one (91) days following the payment in good funds of the Settlement Sum to Coach, the receipt by Coach and Tyburn of the Coach Releases, and the absence of a bankruptcy filing by YCHI, Campolongo or the payor of the Settlement Sum, Coach shall file a motion to dismiss the Campolongo Lawsuit. However, should the Settlement Sum in any way be avoided or Tyburn and/or Coach be forced to disgorge the Settlement Sum (or any amount representing the Settlement Sum or any part thereof): (a) this release of the Debtor Released Parties shall be void, all Claims of Coach and Tyburn against the Debtor Released Parties (including, but not limited to those claims that were asserted, or could have been asserted in the Campolongo Lawsuit) shall be restored and may be asserted; (b) YCHI and Campolongo agree that any statutes of limitations associated with the claims that were asserted, or could have been asserted in the Campolongo Lawsuit are, and have been, tolled; and (c) YCHI and Campolongo irrevocably waive any statute of limitations defenses or allegations relative to the claims that were asserted, or could have been asserted in the Campolongo Lawsuit.

### 4. Representations, Warranties and Stipulations.

### 4.1 Binding Agreements.

DALLAS1 1116162v3 40977-00061

Each Party to this Agreement represents and warrants that he, she, or it has the power and authority to enter into this Agreement, and this Agreement is valid, binding, and enforceable upon him, her or it.

**4.2    Authority.**

Each Party to this Settlement Agreement represents and warrants that no consent, approval, authorization or order of, and no notice to, or filing with any court, governmental authority, person, or entity is required for the execution, delivery, and performance of this Settlement Agreement; provided, however, that this Settlement Agreement is subject to the approval of the Bankruptcy Court. The Parties agree that this Settlement Agreement was negotiated in good faith and that consummation in good faith is a material term hereof, and that they will execute such other documents or take such other actions as needed to consummate the intent of this Settlement Agreement. To the extent that approval of the board of directors of YCHI, Coach or Tyburn is required, the signatory hereto warrants that such approval has been obtained as of the Date of this Settlement Agreement.

**4.3    Ownership of Claims.**

Each Party represents and warrants that it owns the Claims asserted or released in this Settlement Agreement, arising from the Stock Purchase Agreement, the Campolongo Lawsuit, the FLSA Lawsuits or in the Adversary Proceeding, and no part of its Claims asserted or released in this Settlement Agreement have been assigned or transferred to any other person or entity.

**5.    Miscellaneous Provisions.**

**5.1    Modification.**

This Settlement Agreement may be modified only by a written instrument duly executed by all the Parties.

**5.2    Binding Effect.**

The provisions of this Agreement shall be binding upon and inure to the benefit of each of the Parties hereto and each of their respective representatives, directors, agents, employees, officers, affiliates, successors and assigns and the persons and entities being released herein.

**5.3    Severability.**

If any provision of this Settlement Agreement is invalid, illegal or unenforceable, the balance of this Settlement Agreement shall remain in effect, and if any provision is inapplicable to any person or circumstance, it shall nevertheless remain applicable to all other persons and circumstances.

**5.4    Default.**

DALLAS1 1116162v3 40977-00061

In the event that any Party to this Settlement Agreement breaches any provision herein, the other Party shall have the right to institute litigation to enforce this Settlement Agreement and the defaulting Party shall be responsible for reasonable attorneys' fees and costs associated with the enforcement of this Settlement Agreement.

**5.5     Counterparts.**

This Settlement Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**5.6     Governing Law.**

This Settlement Agreement shall be governed by and construed in accordance with the laws of Texas and the United States Bankruptcy Code.

**5.7     Gender and Number.**

Whenever the context requires, the gender of all words used herein shall include the masculine, feminine and neuter, and the number of all words shall include the singular and plural.

**5.8     Date of this Agreement.**

Date of this Settlement Agreement shall refer to the day on which the last Party to this Settlement Agreement executes same before a notary public.

**5.9     Notice.**

To the extent notice is required by any provision of this Settlement Agreement, it shall be sent to the following:

To the Debtor, YCHI or Campolongo:

> Michael Kaminski, Esq.
> Thorp Reed & Armstrong
> One Oxford Centre
> 301 Grant Street
> 14th Floor
> Pittsburgh, PA  1219

To Coach or Tyburn:

> Michael S. Held, Esq.
> Jenkens & Gilchrist,
> A Professional Corporation

1445 Ross Ave.
Suite 3200
Dallas, TX 75202

If any of the above addresses change, the Party shall notify the other Parties to this Settlement Agreement of the change of address in writing.

EACH PARTY EXPRESSLY WARRANTS THAT HE OR SHE HAS CAREFULLY READ THIS SETTLEMENT AGREEMENT, UNDERSTANDS ITS CONTENTS AND SIGNS THIS AGREEMENT AS HIS OR HERS OWN FREE ACT.

James D. Campolongo

Dated:_____                    By:_____


**STATE OF PENNSYLVANIA**     §
                              §
**COUNTY OF** _____      §

    This instrument was acknowledged before me on the _____ day of _____, 2006, by _____ known to me to be the person whose name is subscribed to the foregoing Settlement Agreement and Release and acknowledged to me that he has read the foregoing Settlement Agreement and Release, that he has the authority to execute the Settlement Agreement and Release, and that he executed it for the purposes and considerations therein expressed and in the capacities therein stated.

    Subscribed and sworn to before me on this the _____ day of _____, 2007 to certify which witness my hand and seal of office.


_____
Notary Public in and for
the State of Pennsylvania

Pittsburgh Transportation Company

Dated:_____

By: _____
Name: _____
Title: _____

STATE OF PENNSYLVANIA     §
                                      §

COUNTY OF _____     §

      This instrument was acknowledged before me on the _____ day of _____, 2006, by _____ known to me to be the person whose name is subscribed to the foregoing Settlement Agreement and Release and acknowledged to me that he has read the foregoing Settlement Agreement and Release, that he has the authority to execute the Settlement Agreement and Release, and that he executed it for the purposes and considerations therein expressed and in the capacities therein stated.

      Subscribed and sworn to before me on this the _____ day of _____, 2007 to certify which witness my hand and seal of office.

_____
Notary Public in and for
the State of Pennsylvania

DALLAS1 1116162v3 40977-00061

Y/C Holdings, Inc.

Dated:_____     By: _____
                          Name: _____
                          Title: _____


**STATE OF PENNSYLVANIA**     §
                              §
**COUNTY OF** _____      §

    This instrument was acknowledged before me on the _____ day of _____, 2006, by _____ known to me to be the person whose name is subscribed to the foregoing Settlement Agreement and Release and acknowledged to me that he has read the foregoing Settlement Agreement and Release, that he has the authority to execute the Settlement Agreement and Release, and that he executed it for the purposes and considerations therein expressed and in the capacities therein stated.

    Subscribed and sworn to before me on this the _____ day of _____, 2007 to certify which witness my hand and seal of office.


_____
Notary Public in and for
the State of Pennsylvania

DALLAS1 1115162v3 40977-00061

Coach U.S.A.,

Dated:_____

By: _____
Name: _____
Title: _____

**STATE OF TEXAS**          §
                            §
**COUNTY OF _____**     §

     This instrument was acknowledged before me on the _____ day of _____, 2006, by _____ known to me to be the person whose name is subscribed to the foregoing Settlement Agreement and Release and acknowledged to me that he has read the foregoing Settlement Agreement and Release, that he has the authority to execute the Settlement Agreement and Release, and that he executed it for the purposes and considerations therein expressed and in the capacities therein stated.

     Subscribed and sworn to before me on this the _____ day of _____, 2007 to certify which witness my hand and seal of office.

_____
Notary Public in and for
the State of Texas

DALLAS1 1116162v3 40977-00061

Tyburn Limited

Dated:_____     By: _____
                          Name: _____
                          Title: _____


**STATE OF TEXAS**          §
                            §
**COUNTY OF _____**     §

    This instrument was acknowledged before me on the _____ day of _____, 2006, by _____ known to me to be the person whose name is subscribed to the foregoing Settlement Agreement and Release and acknowledged to me that he has read the foregoing Settlement Agreement and Release, that he has the authority to execute the Settlement Agreement and Release, and that he executed it for the purposes and considerations therein expressed and in the capacities therein stated.

    Subscribed and sworn to before me on this the _____ day of _____, 2007 to certify which witness my hand and seal of office.


_____
Notary Public in and for
the State of Texas

DALLAS1 1116162v3 40977-00061